**In re Marvin Lee PETERS and Billie Jean Peters, Debtors.**

**Bankruptcy No. 381–03063.**

United States Bankruptcy Court, M.D. Tennessee.

Oct. 24, 1984.

Rebecca Lyford, Nashville, Tenn., for debtors.

Henry E. Hildebrand, III, Nashville, Tenn., Chapter 13 Trustee.

Richard L. Cummings, Nashville, Tenn., Chapter 7 Trustee.

## MEMORANDUM

GEORGE C. PAINE, II, Bankruptcy Judge.

This matter is before the court on the Chapter 7 trustee's objection to the debtors' claim that they are entitled to exempt $1,290 of undistributed funds paid to the Chapter 13 trustee in furtherance of the debtors' confirmed Chapter 13 plan. The trustee asserts that the undistributed funds are property of the Chapter 7 estate which may not be exempted by the debtors due to 11 U.S.C. § 522(g)(1)(A) (West 1979). The debtors have advanced three arguments. First, the debtors argue that $400 of the funds were mistakenly withheld from their earnings and paid to the Chapter 13 trustee. Second, the debtors assert that all funds paid to the Chapter 13 trustee prior to the conversion of this case should be paid to their creditors under the terms of the confirmed Chapter 13 plan; and, any funds paid to the Chapter 13 trustee subsequent to the conversion of this case never became property of either the Chapter 7 estate or the Chapter 13 estate and should be refunded. Finally, the debtors argue that they are entitled to exempt any funds which were paid to the Chapter 13 trustee and found to be part of the Chapter 7 estate.

■ Upon consideration of the evidence presented, exhibits, briefs of the parties, applicable authority and the entire record, this court concludes that the funds held by the Chapter 13 trustee are not property of the debtors' Chapter 7 estate. The debtors are entitled to these undistributed funds.

The following shall represent findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

On September 29, 1981, the debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The court confirmed the debtors' Chapter 13 plan on November 10, 1981, and ordered certain payroll deductions to fund the debtors' plan. On February 7, 1983, the court entered an order modifying the debtors' Chapter 13 plan and reducing the $1000 per month payroll deduction to a deduction of $600 per month.[1]

Pursuant to the debtors' request, the district court dismissed the debtors' Chapter 13 petition on July 20, 1983. On August 1, 1983, the debtors filed a motion requesting that the court reconsider its dismissal of the Chapter 13 case and allow the debtors to convert the Chapter 13 case to a Chapter 7 proceeding. On September 19, 1983, the bankruptcy court vacated the dismissal of the debtors' Chapter 13 petition. An order was entered on October 19, 1983 converting the debtors' Chapter 13 case to a case under Chapter 7 of the Bankruptcy Code.

As stipulated by the parties, the undistributed payroll deductions were received by the Chapter 13 trustee between the months of March and October, 1983. These undistributed funds equal a total amount of $1,290.

## I.

The threshold issue is whether wages paid into a debtor's Chapter 13 plan qualify, after conversion, as property of the

---

1. The February 7, 1983, order of the bankruptcy court was approved by the district court on July 13, 1983. In accordance with Administrative Order 28–4 of the United States District Court for the Middle District of Tennessee, this order was entered by the district court on February 7, 1983, *nunc pro tunc.*

 The record established that the debtors' employers paid the former Chapter 13 trustee $400 over the amount required by the February 7, 1983, order. Although the debtors applied for a refund from the Chapter 13 trustee on March 1, 1983, the refund was approved only on the condition that a court of valid jurisdiction approve the February 7, 1983, order of the bankruptcy court.

debtor's Chapter 7 estate. In resolving this, the court must be guided by the provisions of 11 U.S.C. § 348 (West 1979) and the policy considerations underlying that section.

Conversion from one Chapter of the Bankruptcy Code to another is described in 11 U.S.C. § 348 (West 1979). This section describes the general procedural effect of a conversion on the commencement of a case in subsection (a) with the exceptions to this general rule listed in the subsequent subsections. Subsection (a) provides that the conversion of a case does not change the date of either the filing of the petition or the commencement of the case.[2] Subsections (b) and (c) provide a list of Code sections in which the date of conversion is treated as the date of the order for relief, instead of the date of the filing of the petition. Subsection (d) provides that any claims other than 503(b) claims which arise during the pendency of the Chapter 13 case but before conversion to Chapter 7 shall be treated as if such claim had arisen immediately before the date of the filing of the petition.[3]

■ According to 11 U.S.C. § 541 (West 1979), the property of an estate is determined as of the date of the commencement of the case. Under the general rule of § 348(a), the date of the filing of a Chapter 13 petition is treated as the date of the "commencement" of the converted Chapter 7 case. Since no exception is found within § 348 relating to a determination of property of the estate, this general rule must apply. *In re Bullock,* 41 B.R. 637, CCH § 69,973, at 85,568 (Bankr.E.D.Pa.1984); *Oliphant v. Amarillo Pantex Federal Credit Union,* 40 B.R. 577 (Bankr.N.D.Tex. 1984); *Hannan v. Kirschenbaum,* 24 B.R. 691 (Bankr.E.D.N.Y.1982).[4] Therefore, once a case has been converted from a Chapter 13 case to a Chapter 7 case, the court must look to the date of the filing of the Chapter 13 case to identify under § 541 property of the Chapter 7 estate.

The funds in question in this case were payroll deductions paid into the estate after the commencement of the Chapter 13 case. Under 11 U.S.C. § 541, the property of the Chapter 7 estate consists of "all legal or equitable interest of the debtor in property as of the commencement of the case." Since the debtor did not acquire any interest in the undistributed wages until after the commencement of his case, these funds are not property of the Chapter 7 estate.

The proposition that undistributed wages held by a Chapter 13 trustee do not become property of the Chapter 7 estate on conversion is not only supported by the structure of the Bankruptcy Code but accords with congressional policy. Chapter 13 of the Bankruptcy Code was intended to " . . . encourage[s] more debtors to repay their debts over an extended period rather than to opt for straight bankruptcy liquidation and discharge." H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 5 (1977), U.S.Code Cong. & Admin.News 1978, 5966.

---

**2.** 11 U.S.C. § 348(a) (West 1979) provides:

"(a) Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted, but, except as provided in subsections (b) and (c) of this section, *does not effect a change in the date of* the filing of the petition, *the commencement of the case,* or the order for relief." (Emphasis added.)

**3.** 11 U.S.C. § 348(d) (West 1979) provides:

"(d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 or 1307 of this title, other than a claim specified in 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition."

S.Rep. No. 95–989, 95th Cong., 2nd Sess. 48 (1978), U.S.Code Cong. & Admin.News, 1978, 5787, 5834, provides in relevant part:

"Subsection (d) provides for *special treatment* of claims that arise during chapter 11 or 13 cases before the case is converted to a liquidation case. With the exception of claims specified in proposed 11 U.S.C. 503(b) (administrative expenses), preconversion claims are treated the same as prepetition claims." (Emphasis added.)

**4.** This court was impressed with Judge Goetz's reasoning in the *Hannan* opinion and has expanded upon it in the present case.

In return for a debtor's resolve to commit more of his assets to the repayment of his creditors than would be required under a Chapter 7 liquidation, Chapter 13 of the Bankruptcy Code provides the debtor with a number of benefits unavailable under Chapter 7. The legislative history of the Bankruptcy Code identifies some of these benefits.

> The benefit to the debtor of developing a plan of repayment under chapter 13, rather than opting for liquidation under chapter 7 is that it permits the debtor to protect his assets .... Under chapter 13, the debtor may retain his property by agreeing to repay his creditors. Chapter 13 also protects a debtor's credit standing far better than a straight bankruptcy, because he is viewed by the credit industry as a better risk. In addition, it satisfies many debtors' desire to avoid the stigma attached to straight bankruptcy and to retain the pride attendant on being able to meet one's obligations. The benefit to creditors is self-evident: their losses will be significantly less than if their debtors opt for straight bankruptcy.

H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 118 (1977), U.S. Code Cong. & Admin. News 1978, 6079.

In addition to the benefits specifically enumerated in the legislative history, other benefits can be identified. One such benefit is the provisions of § 348(a). Since this section treats the date of commencement of the Chapter 13 case as the date of commencement of the Chapter 7 case after conversion, the debtor is not penalized for originally pursuing a Chapter 13 case instead of a Chapter 7 case. If the debtor is unable to succeed under Chapter 13, he is treated as if he had originally filed a petition under Chapter 7.

## II.

A number of cases have dealt with the issue of whether undistributed wages paid into a Chapter 13 plan become property of the Chapter 7 estate upon conversion. These cases have, for the most part, held that the undistributed wages do become property of the Chapter 7 estate. An analysis of these cases leads this court to the conclusion that they have ignored two important principles. First, they have failed to recognize the distinction between the definitions of property of a Chapter 7 estate and property of a Chapter 13 estate. Second, they have relied on unsupported policy arguments and have failed to recognize the congressional intent to encourage debtors to adopt a Chapter 13 plan in lieu of a Chapter 7 liquidation.

Property of a debtor's Chapter 13 estate is not synonymous with property of his Chapter 7 estate. Under 11 U.S.C. § 1306 (West 1979), property of a Chapter 13 estate includes not only that property identified in 11 U.S.C. § 541 (West 1979) but also "... earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under Chapter 7 or 11 of this title, whichever occurs first." The Senate Report on the Bankruptcy Code noted that § 1306 "... broadens the definition of property of the estate for chapter 13 purposes to include all property acquired and all earnings from services performed by the debtor after the commencement of the case." S.Rep. No. 95–989, 95th Cong., 2nd Sess. 140–141 (1978), U.S. Code Cong. & Admin. News 1978, 5926–5927.

Both the Eighth Circuit decision of *Resendez v. Lindquist*, 691 F.2d 397 (8th Cir. 1982), and the *Giambitti* decision, 27 B.R. 492 (Bankr.Or.1983), treat a Chapter 13 estate the same as a Chapter 7 estate. In the *Resendez* decision, the Eighth Circuit relied on a section of COLLIER ON BANKRUPTCY which stated that "... when the trustee in a liquidated case following conversion has qualified or entered upon the performance of his duties he is entitled to take possession of *all the property* and records of the converted Chapter 13 case." (Emphasis added.) *Resendez* at 398–399 (quoting 2 COLLIER ON BANKRUPTCY § 348.07 (15th Ed.1981)). This same language may be found in § 348.07 of

the more recent 1984 edition of COLLIER ON BANKRUPTCY. 2 COLLIER ON BANKRUPTCY § 348.07, at 348–12 (15th Ed.1984).

Section 348.07 of COLLIER discusses Federal Rule of Bankruptcy Procedure 1019. Rule 1019 provides:

> (5) TURNOVER OF RECORDS AND PROPERTY. After qualification of, or assumption of duties by the chapter 7 trustee, any debtor in possession or trustee previously acting in the chapter 11 or chapter 13 case shall, forthwith, unless otherwise ordered, turn over to the chapter 7 trustee all records and *property of the estate* in his possession or control. (Emphasis added.)

Collier paraphrases Paragraph (5) of Rule 1019 as stating that the former trustee of a converted Chapter 13 case is required to "... turn over forthwith *all the property* and records in his possession or subject to his control ...." COLLIER at 348–12. Collier's paraphrasing of Rule 1019 is cited as support for the conclusion that a Chapter 7 trustee is entitled to all the property of a converted Chapter 13 estate.

Unfortunately, this analysis of Rule 1019 ignores the fact that property of the estate is used within the Bankruptcy Code as a word of art. One cannot equate the term "property of the estate" with the term "property". Such an equation is particularly misleading in the context of Rule 1019. One must be aware that property of a Chapter 13 estate includes more than the term "property of a Chapter 7 estate".[5]

In the cases of *In re Tracy*, 28 B.R. 189 (Bankr.Me.1983) and *In re Wanderlich*, 36 B.R. 710 (Bankr.W.D.N.Y.1984), it was acknowledged that the definition of property of a converted Chapter 13 estate encompassed more than the definition of the property of a Chapter 7 estate. Both

courts, however, held that undistributed wages held by a Chapter 13 trustee were property of the converted Chapter 7 estate based on unsupported policy arguments.

The *Wanderlich* court analyzed the consequences to debtors and creditors in two separate situations: (i) a conversion to Chapter 7 from Chapter 13 and (ii) a dismissal of a Chapter 13 case followed immediately by the filing of a Chapter 7 case. In both situations the court found the results should be identical. "Such symmetry and mirroring of consequences, this writer *suggests*, was intended by Congress." (Emphasis added.) *Wanderlich* at 716.

The *Tracy* decision used a similar symmetry policy argument in reaching its holding. Focusing on § 348(d), it held that since the Code treated claims which occurred after the filing of the Chapter 13 petition and before the conversion of the case as prepetition claims in the Chapter 7 case, it was '*logical*' to treat the date of the conversion to Chapter 7 as the date for determining property of the Chapter 7 estate under 11 U.S.C. § 541 (West 1979).

Both the *Tracy* decision and the *Wanderlich* decision ignore the congressional policy to encourage debtors to file Chapter 13 plans and ignore the fact that certain benefits are provided to Chapter 13 creditors as an incentive. One such benefit, leaving the date of the filing of the petition unchanged by conversion, is provided by the Code as long as the debtor remains in bankruptcy. The *Wanderlich* court ignores the fact that the Code provides benefits to those who are in a Chapter 13 bankruptcy which it does not provide to other debtors. The *Tracy* decision ignores not only the congressional intent to encourage debtors to file a Chapter 13 petition, but it also ignores the statutory scheme of 11 U.S.C. § 348 (West 1979) and the specific language of both 11 U.S.C.

---

**5.** Although *Giambitti* does not expressly rely on COLLIER, the decision adopts the reasoning of *Resendez* without any analytical discussion.

The case of *In re Richardson*, 20 B.R. 490 (Bankr.W.D.N.Y.1982) does not expressly equate the property of a converted Chapter 13 estate with the property of a Chapter 7 estate. The case does, however, suggest that undistributed wages paid to a Chapter 13 trustee become part of the Chapter 7 estate on conversion because the Chapter 13 creditors' interest in those wages never vested. Thus, the *Richardson* court in effect held that the property of a converted Chapter 13 estate was analgous with the property of a Chapter 7 estate.

§ 348(a) (West 1979) and 11 U.S.C. § 541 (West 1979). It is true, that "[b]ecause the debtor converted to chapter 7, ... creditors whose claims arose after the original chapter 13 filing, but before conversion to chapter 7, would share in the estate along with the pre-filing creditors, to the detriment of the latter." *Tracy* at 190–191 n. 1. However, this detriment is contemplated by the Code in § 348 and may be viewed as an expense incurred by creditors in an attempt to encourage debtors to repay a greater portion of their debts than required under Chapter 7 of the Code.

### III.

Since this court, after an analysis of relevant Code sections and case law, is convinced that the undistributed funds held by the Chapter 13 trustee did not become property of the Chapter 7 estate on conversion, it must now determine who is entitled to these funds. Upon an analysis of relevant Code sections and case law, the court has determined that these undistributed funds belong to the debtors.

Upon confirmation of the debtors' Chapter 13 plan, title to the property of the Chapter 13 estate vests in the debtor except as otherwise provided in the plan or the order confirming the plan. *In re Adams*, 12 B.R. 540, 542 (Bankr.D.Utah 1981); 11 U.S.C. § 1327(b) (West 1979); 5 COLLIER ON BANKRUPTCY § 1327.01, at 1327–2 (15th ed. 1984). When a Chapter 13 case is converted to a case under Chapter 7, the Chapter 13 plan and the order confirming that plan are no longer in force. *In re Doyle*, 11 B.R. 110, 111 (Bankr.E.D. Pa.1981). Since the Chapter 13 plan is no longer in effect, the creditors of the Chapter 13 debtor may not claim rights in the undistributed funds superior to the debtor. Thus, the undistributed funds held by the Chapter 13 trustee must be returned to the debtor.

Accordingly, the court hereby ORDERS, ADJUDGES, and DECREES that the debtor is entitled to a judgment in the amount of $1,290. The court will, contemporaneously with this decision, enter a judgment awarding these funds to the debtors.

IT IS, THEREFORE, SO ORDERED.